IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
)
)
vs. ) Criminal No. 11-122
) See Civil Action No. 13-636
)
JERRY R. BELT, )
)
Defendant/Petitioner. )

ORDER

AND NOW, this 11th day of February, 2014, upon consideration of Petitioner's pro se "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (document No. 401) and affidavit in support thereof (document No. 402), filed in the above captioned matter on May 6, 2013, as well as the appendices in support thereof (document Nos. 405 & 406), filed in the above captioned matter on May 23, 2013, and in further consideration of Petitioner's failure to respond to the Court's May 7, 2013 Show Cause Order,

IT IS HEREBY ORDERED that Petitioner's Motion is DISMISSED. IT IS FURTHER ORDERED that no certificate of appealability shall be issued.

## I. Background

On November 29, 2011, Petitioner pled guilty to Counts One, Two, and Seven of the indictment. Count One charged him with possession with the intent to distribute and distribution of less than 500 grams of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count Two charged him with possession with the intent to distribute and distribution of 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). Count Seven charged him with conspiracy to possess with the intent to distribute and distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), in violation of 21 U.S.C. § 846. In connection with his plea, Petitioner and the Government entered into a written plea agreement containing several provisions, including a stipulation as to the type and quantity of controlled substance attributable to Petitioner for purposes of USSG § 2D1.1, which was at least 5 kilograms but less than 15 kilograms of cocaine. The plea agreement also indicated that the parties understood and agreed that the issue of whether Petitioner satisfied the conditions set forth in 18 U.S.C. §

2

3553(f) (also known as the "safety valve"), so as to allow the Court to sentence him below the statutory minimum sentence, would be decided by the Court at sentencing. It further specified that, in particular, whether Petitioner was an organizer, leader, manager, or supervisor of the conspiracy, and whether Petitioner had provided to the Government all the information he had concerning his offenses, would be subject to litigation.

The plea agreement further included a waiver of certain appellate rights as well as a provision stating that Petitioner "further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." The agreement further stated that it

> sets forth the full and complete terms and conditions of the agreement between [Petitioner] and the [Government], and there are no other agreements, promises, terms or conditions, express or implied.

Petitioner signed the agreement and agreed at the plea hearing that he had agreed to the terms set forth in the agreement, which both the Government and the Court reviewed for him at that hearing. With respect to the appellate and collateral waiver portion of the agreement, the Court specifically inquired as to

3

whether anyone had made a threat to Petitioner or anyone else that forced him to enter into the waivers, and Petitioner responded that no one had done so. The Court then asked whether anyone had made any promises to Petitioner, other than the promises contained in the plea agreement, that induced him to waive his rights, and Petitioner again replied in the negative. The Court thus found that Petitioner had entered into the waivers knowingly and voluntarily and accepted Petitioner's plea.

On March 28, 2012, the final Presentence Investigation Report ("PIR") was filed, in which the probation officer concluded that a four-level enhancement was warranted pursuant to USSG § 3B1.1(a) because Petitioner was a leader or organizer of the conspiracy. Accordingly, the probation officer also did not apply the safety valve provisions of Section 3553(f) and USSG § 5C1.2. Petitioner's counsel objected to the finding that a Section 3B1.1(a) enhancement was warranted and further argued that the safety valve did apply and that the Court could therefore sentence Petitioner below the statutory minimum sentence. In its Tentative Findings and Rulings Concerning Disputed Facts or Factors, issued on April 25, 2012, the Court indicated that it could not determine whether either Section

3B1.1 or the safety valve applied until the parties had presented evidence as to these issues.

Petitioner's sentencing hearing was held on May 2, 2012. At the hearing, the parties presented evidence both as to whether Petitioner was an organizer or leader of the conspiracy subject to an enhancement under Section 3B1.1, and as to whether the safety valve provisions applied, including whether Petitioner had truthfully provided to the Government all the information and evidence he had regarding his offenses. After considering the evidence, the Court agreed with Petitioner on the first issue and found that he was not subject to an enhancement as a leader or organizer of the drug conspiracy pursuant to Section 3B1.1. The Court did, however, find that the safety valve did not apply because Petitioner's disclosures to the Government were neither complete nor truthful. As a result, the statutory minimum sentence of imprisonment of 10 years became the recommended guideline sentence, and, accordingly, the Court imposed a sentence of 120 months at each of Counts One, Two, and Seven, all to be served concurrently, to be followed by a term of supervised release of three years at Count One, four years at Count Two, and five years at Count Seven, all to be served concurrently.

Petitioner did not appeal his conviction or sentence. Instead, he filed the present motion pursuant to 28 U.S.C. § 2255 on May 6, 2013. Because the Court was aware of the waiver of the right to file a Section 2255 motion contained in the plea agreement entered into by Petitioner, it ordered Petitioner to show cause why his motion should not be dismissed on the basis of this waiver. Despite requesting and receiving two extensions of time to file his response to the Court's order, he has failed to file a response.

II. **Discussion**

The Court finds Petitioner's waiver of his right to file a collateral proceeding attacking his conviction or sentence to be enforceable. As noted, Petitioner filed his motion pursuant to Section 2255. This section permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). However, a criminal defendant may waive his right to file a motion under Section 2255 or to otherwise seek

collateral relief. Such a waiver is valid if entered into "knowingly and voluntarily" unless it would work a "miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008). A district court has an affirmative duty to conduct an evaluation of the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice. See Mabry, 536 F.3d at 237-38.

Here, Petitioner clearly and unambiguously waived his right to file a motion under Section 2255 or to otherwise seek collateral relief, and the record demonstrates that the waiver is enforceable. The Court questioned Petitioner extensively regarding the waiver of his right to file an appeal or collateral attack as to his plea and sentence:

> Do you understand that ordinarily you or the Government may have the right to appeal any sentence the court imposes; however, the Court notes that in paragraph A5 of the plea agreement, you and the Government agreed that you would waive, that is, give up your right to take a direct appeal from your conviction or sentence subject to the following exceptions:
>
> First, if the United States appeals from the sentence, you may take a direct appeal from the sentence. Do you understand that?
>
> Secondly, you may also take a direct appeal from the sentence only on the following grounds:

7

> First, the sentence exceeds the
> applicable statutory limits set forth
> in the United States Code. Do you
> understand that?
>
> And secondly, the sentence unreasonably
> exceeds the guideline range determined
> by the Court under the Sentencing
> Guidelines. Do you understand that?

> To repeat, by these provisions of the plea
> agreement, you're giving up the right to
> appeal both the validity of your plea of
> guilty and the legality of your sentence.
> Do you understand that?
>
> Further, you have also waived the right to
> file a motion to vacate sentence under Title
> 28, United States Code, Section 2255, and
> the right to file any other collateral
> proceeding attacking your conviction or
> sentence. Do you understand that?

Petitioner answered all of these questions in the affirmative.

The Court therefore continued:

> The waivers you've entered into are
> generally enforceable if entered into
> knowingly and voluntarily unless they work a
> miscarriage of justice. Has anyone made a
> threat to you or to anyone else that's
> forced you to waive these rights?
>
> Has anyone made any promise to you other
> than the promises that are made in the plea
> agreement that has induced you to waive
> these rights?

When Petitioner responded in the negative, the Court found the waivers to be knowing and voluntary. Nothing submitted by

Petitioner or contained in the record calls for a contrary finding.[1]

Moreover, no miscarriage of justice would occur as a result of the enforcement of the waiver. As the Third Circuit has explained, in determining whether there would be a miscarriage of justice, the Court must consider factors such as the clarity of the alleged error, its gravity, its character, the impact of the error on Petitioner, the impact of correcting the error on the Government, and the extent to which Petitioner acquiesced in the result. See Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). Applying those factors here demonstrates that no miscarriage of justice will occur by enforcing the collateral waiver.

The Court first notes that Petitioner's failure to respond to this Court's May 7, 2013 order to show cause why his motion should not be dismissed on the basis of the waiver of his right to file a Section 2255 motion contained in the plea agreement makes it difficult to determine what miscarriage of justice he believes would result from enforcement of the waiver.[2]

---

[1] Petitioner makes cursory mention that his counsel failed to explain the waivers to him adequately, but he provides no facts in support of his one line claim. As discussed below, this is insufficient to warrant additional consideration.

[2] The Court is conscious, though, that pro se pleadings are held to less stringent standards than formal pleadings drafted

Regardless, the Court's own evaluation of the record confirms that enforcement of the waiver would work no miscarriage of justice. Although Petitioner raises a litany of separate grounds for relief, he does not develop any of them beyond a one line general description of the claim. Accordingly, the grounds raised by Petitioner are so lacking in specificity, so vague, and so conclusory that no further discussion would be warranted, even were the Court considering the claims themselves and not merely determining the enforceability of the waiver. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988). Indeed, a defendant must set forth sufficient facts in support of the grounds alleged, and Petitioner has not even attempted to do so. See Thomas, 221 F.3d at 437-38.

In fact, the only issue as to which Petitioner offers any facts in support is his counsel's alleged ineffectiveness in failing to perfect a notice of appeal on his behalf.[3] In support

---

by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).

[3] Petitioner does provide some material regarding his alleged diminished mental capacity. However, because the Court found that the safety valve did not apply because Petitioner's disclosures to the Government were neither complete nor truthful, he was subject to the statutory minimum sentence, so such evidence would have had no impact on his sentence. In fact, the applicability of the safety valve was the primary

of this claim, he submits an affidavit from his girlfriend. While her affidavit does contain discussion as to this issue, she attests that no mention was made of filing a notice of appeal during a conversation between Petitioner and counsel regarding the issue of an appeal at which she was present. She further states that, during this conversation, Petitioner and counsel discussed an additional retainer for representation on appeal and the possible appealable issues. This in no way establishes counsel's ineffectiveness as it neither alleges that counsel failed to file a notice of appeal contrary to Petitioner's instructions nor that any of the advice given by counsel to Petitioner was incorrect. The Court further notes that Petitioner's plea agreement contained a waiver of many of his rights to appeal his sentence or conviction.

Regardless, although a miscarriage of justice can occur based on the ineffectiveness of counsel, merely raising such a claim does not render a waiver unenforceable. See United States v. Akbar, 181 Fed. Appx. 283, 286-87 (3d Cir. 2006). As noted, the Court must still consider other factors, including the clarity of the alleged error, its gravity, its character,

---

issue at Petitioner's sentencing, and both his counsel and the Government litigated the issue vigorously. Petitioner was, of course, aware that this issue would be contested, as his plea agreement itself indicated that the parties would litigate the issue at sentencing.

the impact of the error on Petitioner, the impact of correcting the error on the Government, and the extent to which Petitioner acquiesced in the result. These factors demonstrate that no miscarriage of justice would result from enforcing the waiver. As to the first four of these factors, as discussed, Petitioner has established no error on the part of counsel, let alone a clear error. Moreover, because of the comprehensive appellate waiver, it is not apparent what harm Petitioner has suffered even assuming counsel erred in failing to file a notice of appeal.[4] On the other hand, the Government would be prejudiced significantly by having to try a case that is now several years old and in which it relied on cooperating witnesses who have already received consideration for their assistance. These witnesses may or may not be willing to testify in a new trial. Further, Petitioner acquiesced in any error, as there is nothing in the record that would indicate that he himself sought to file a notice of appeal or that he refrained from doing so because he thought counsel would do so. As discussed above, the record

---

[4] It is important to note again that the Court is not conducting an ineffective assistance of counsel analysis, in which prejudice is presumed from the failure to file the notice, see Solis v. United States, 252 F.3d 289, 293-94 (3d Cir. 2001), but rather an analysis as to whether enforcing a knowing and voluntary waiver would work a manifest injustice. See Mabry, 536 F.3d at 239-42.

actually refutes any notion that Petitioner was relying on counsel to file a notice of appeal.

In sum, no miscarriage of justice will occur if the waiver is enforced. The Court's independent review of the record reveals nothing to the contrary.

### III.     Conclusion

Accordingly, Petitioner's motion is dismissed. Moreover, because Petitioner waived his right to file any such motion, this Court does not reach the merits of Petitioner's claims, and there would be no basis for issuing a certificate of appealability, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

cc:  Jerry R. Belt, #32967-068
     FCI Gilmer
     P.O. Box 6000
     Glenville, WV 26351